Filed 7/26/23  P. v. Craig CA2/1

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>LAWRENCE DIMITRIOUS CRAIG,<br><br>  Defendant and Appellant. | B323587<br><br>(Los Angeles County Super. Ct. No. BA497302) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Drew E. Edwards, Judge.  Affirmed in part and reversed in part with directions.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

On July 22, 2021, in connection with a domestic violence incident, defendant Lawrence Dimitrious Craig fired shots from a handgun in the street near his girlfriend T.W.'s apartment before she fled.[1]  Los Angeles Police Department (LAPD) officers found several nine-millimeter semiautomatic shell casings at the scene but were unable to apprehend Craig.  Less than 36 hours later, on July 24, 2021, T.W. returned to her apartment and encountered Craig outside.  After T.W. locked herself inside the apartment, Craig shot at her kitchen window from the street.  LAPD officers arrested Craig approximately one to two miles from T.W.'s apartment.  They recovered several nine-millimeter semiautomatic shell casings outside of the apartment but did not find the gun used in either shooting.  A jury convicted Craig of, among other things, two counts of possession of a firearm by a felon (Pen. Code,[2] § 29800, subd. (a)(1)): one count for the July 22, 2021 incident, and a separate count for the July 24, 2021 incident.

Craig raises a single issue on appeal.  He contends one of his two convictions for possession of a firearm must be reversed because the crime is a continuing offense, and there is no substantial evidence that he committed two distinct felon-in-possession offenses.  We agree and reverse the judgment on count 5, the earlier in time of the two felon-in-possession counts,

---

[1] To protect personal privacy interests, we refer to the victim of Craig's domestic violence and her mother by their initials.  (Cal. Rules of Court, rule 8.90(b).)

[2] Further statutory references are to the Penal Code unless otherwise specified.

and remand the matter to the trial court so that it may determine whether to resentence Craig.

BACKGROUND

## A. Factual Summary

The prosecution's evidence established the following facts relevant to the issue presented by this appeal. Craig and T.W. lived together in her apartment. On July 22, 2021, T.W. telephoned her mother, N.B., and asked her to get Craig to leave the apartment. When N.B. arrived, she observed T.W. seated in a vehicle in the street in front of the apartment building. N.B. went to the apartment and asked Craig to open the door. She told him he should stay away for two or three days and then T.W. and Craig could reconcile. Craig stated he did not want to go. Either N.B. (who had keys to the apartment) or Craig opened the door. N.B. told Craig that she would telephone the police if he did not leave. N.B. called 911 at 3:50 p.m.

Craig left the apartment, and N.B. followed him, reporting his location to the 911 operator. During a second 911 call, N.B. stated that Craig "was shooting a gun up in the street." N.B. and T.W. left the scene.

Two nearby residents heard gunshots around 4:00 p.m. One of the residents telephoned 911 at 4:02 p.m. to report that he heard five gunshots. The other, who lived next door to the first, provided residential surveillance camera video to police that showed Craig discharging a firearm. During closing argument, the prosecutor described the surveillance video as showing Craig pulling a gun out of a brown backpack or messenger bag that Craig wore over one shoulder.

LAPD officers arrived at the scene at 4:09 p.m. They canvassed the area but did not locate Craig or a gun. The officers

3

found five bullet casings from a nine-millimeter semiautomatic firearm in the vicinity of where the person shooting the gun appeared on the residential video footage.

On July 24, 2021, T.W. returned to her apartment and encountered Craig outside. At 1:26 a.m., T.W. telephoned 911 and reported gunshots outside of her home. She stated, "Uh, Lawrence—I believe it's Lawrence Craig. He just, basically, he ran up on me, he could've killed me, but he didn't. So, I got—I had enough time to come inside my house. So, I–I'm inside my house and I locked the doors and everything and then he just started shooting right now. He shot five times, like, right now outside of [her address]." During the call, T.W. describes that Craig is carrying "a brown backpack, but it's not a backpack, it's something like goes over one shoulder, like is a man's bag."

LAPD officers responded to the scene and searched the area. Officer Anthony Lozano saw someone matching T.W.'s description of Craig walking about one to two miles from T.W.'s home. The individual was in fact Craig; his shirt was wet with sweat, as if he had been running. The officers did not find a gun or bag on Craig or in the area. Police officers drove T.W. to an intersection where they had detained Craig, and she identified him as the shooter.

Investigating officers found four bullet holes around T.W.'s kitchen window facing the street and that a fifth bullet had shattered her kitchen window and created a hole in her kitchen ceiling. Police officers recovered five nine-millimeter semiautomatic shell casings on the westbound side of T.W.'s street, just south of her apartment building. Police officers swabbed Craig's hands for gunshot residue. One sample tested positive, indicating Craig either discharged a firearm, was near

4

someone who discharged a firearm, or came into contact with a surface contaminated with gunshot residue.

At trial, LAPD Detective Nicholas Gallego testified that the recovered casings were all nine-millimeter and semiautomatic, but that this did not establish one way or the other whether the 10 casings came from the same gun. He testified it was possible all the casings came from the same gun, and that it was possible they all came from different guns. Of the five casings found at the scene on July 22, 2021, two were F.C. Lugar brand ammunition, two were "G.F.L.," and the one remaining casing was unidentified. Three of the five casings from the July 24, 2021, incident were Hornady brand ammunition; the other two were unidentified. Although the brands of ammunition were different between the July 22 and July 24, 2021 incidents, Detective Gallego testified that did not mean the casings came from different guns. He elaborated, "You can put any nine[-]millimeter brand of ammunition into a nine[-]millimeter handgun, and they will shoot the same. The brand in and of itself has no bearing if they are the same kind of round."[3]

---

[3] Craig notes that during closing arguments, the prosecution argued, "all of this evidence together, and it is consistent with the nine millimeters because they are all the same. They are consistent with being fired in the same gun, a nine[-]millimeter semiautomatic." Craig suggests this was a prosecutorial concession that he possessed only one gun; based on the context of this argument, however, this statement referred only to the casings from the July 22, 2021 shooting. In any event, the arguments of counsel are not evidence and are of limited value in evaluating whether Craig's possession of a firearm was continuous.

## B.    Procedural Summary

A second amended information charged Craig with attempted, willful, deliberate, and premeditated attempted murder (§§ 187, 664; count 1), two counts of shooting at an inhabited dwelling (§ 246; counts 2, 4), two counts of possession of a firearm by a felon (§ 29800, subd. (a)(1); counts 3, 5), and discharging a firearm with gross negligence (§ 246.3, subd. (a); count 8).[4]  Counts 1 through 3 related to the events of July 24, 2021; counts 4, 5, and 8 related to the events of July 22, 2021. The information further alleged that Craig had been convicted of two violent or serious felonies within the meaning of section 667, subdivision (d), and section 1170.12, subdivision (b), and factors in aggravation of the sentence.  The trial court dismissed counts 1 and 4 before they reached the jury.[5]

A jury convicted Craig of shooting at an inhabited dwelling (count 2), two counts of possession of a firearm by a felon (counts 3, 5), and discharging a firearm with gross negligence (count 8). Craig thereafter admitted two prior violent or serious felonies within the meaning of section 667, subdivision (d), and section 1170.12, subdivision (b).

The trial court held a sentencing hearing on August 25, 2022.  It found true two factors in aggravation of the sentence

---

[4] The second amended information did not include counts 6 or 7 as the trial court found the evidence at the preliminary hearing insufficient to support those counts.

[5] The counts were renumbered for purposes of the verdict forms, only.  We refer to the counts as they were identified in the second amended information.

and, pursuant to Craig's *Romero*[6] motion, dismissed one of two strike allegations due to the age of the conviction. The trial court sentenced Craig to a total of 18 years in state prison, imposing a sentence of seven years doubled to 14 years pursuant to his prior strike conviction for count 2, and eight months doubled to 16 months, consecutive, for each of counts 3, 5, and 8.[7]

Craig filed a timely notice of appeal.

## DISCUSSION

Our Supreme Court has recognized that possession of a firearm by a felon is a continuing offense. (See *People v. Mason* (2014) 232 Cal.App.4th 355, 365, citing *Wright v. Superior Court* (1997) 15 Cal.4th 521, 525, fn. 1.) Prohibited individuals have an affirmative obligation to comply with statutorily imposed duties forbidding possession of firearms. (*Mason, supra*, at p. 366.) " '[A] continuing offense is marked by a continuing duty in the defendant to do an act which he fails to do. The offense continues as long as the duty persists, and there is a failure to perform that duty.' [Citations.] Thus, when the law imposes an affirmative obligation to act, the violation is *complete* at the first instance the elements are met. It is nevertheless not *completed* as long as the obligation remains unfulfilled. 'The crime achieves no finality until such time.' [Citations.]" (*Wright, supra*, at pp. 525-526.) " 'In the case of continuing offenses, only one violation occurs even though the proscribed conduct may extend over [an]

---

[6] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 permits a sentencing court to dismiss a prior strike conviction in the furtherance of justice under section 1385.

[7] For counts 3, 5, and 8, the trial court selected one-third of the middle term of 24 months.

7

indefinite period.' [Citations.]" (*Mason, supra*, at p. 365.) Thus, in *Mason*, the Court of Appeal reversed all but one count for possession of a firearm because the prosecution did not present evidence that the defendant relinquished possession of the firearm or that his possession was interrupted during the over 20-month period between the charged crimes. (*Id*. at pp. 361, 366-367.)

In reviewing the sufficiency of the evidence to support a criminal conviction, we "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) "Speculation, however, is not enough." (*People v. Waidla* (2000) 22 Cal.4th 690, 738.)

Here, the record fails to disclose reasonable evidence of solid value upon which the trier of fact could find beyond a reasonable doubt that Craig possessed two different firearms, or relinquished possession of a single firearm between the shooting on July 22, 2021, and the shooting on July 24, 2021. To support its argument that Craig committed two separate offenses, the Attorney General points to Detective Gallego's testimony that different brands of ammunition were used for each shooting, and Gallego's speculation that the casings could have come from different guns. Further, the Attorney General argues that because Craig disposed of whatever gun he used on July 24, 2021, before he was arrested, he "likely" also disposed of the gun he used on July 22, 2021.

Putting aside speculation, as we must, the evidence showed only that the weapon used on July 22 as well as on July 24 was a nine-millimeter semiautomatic handgun, and that Craig had no weapon on him when he was arrested on July 24. That's it. Without more, this evidence falls short of the necessary substantial evidence to show Craig committed two distinct crimes of being a felon-in-possession of a firearm. While the brand of ammunition used on the two occasions was not consistent, any inference from that fact is entirely speculative. Detective Gallego testified the difference in ammunition was not informative as to whether Craig used the same or different firearms on the two dates in question.

Nor does the fact that Craig had no weapon on him when police arrested him on July 24 fairly support that he committed a distinct felon-in-possession offense on July 22. Investigators found neither the handgun nor the brown bag Craig carried (from within which he drew the handgun on July 22) when they arrested him on July 24. Yet, on July 24, Craig still had the brown bag with him when he was shooting at T.W.'s apartment. Thus, contrary to the Attorney General's suggestion, it is not reasonable to infer that Craig disposed of the gun he used on July 22 simply because he did so on July 24. Shorn of speculation, the evidence appears to indicate Craig kept possession of the same firearm that he had with him on July 22, and disposed of the bag and the gun only on July 24, 2021.

" '[W]hen the law imposes an affirmative obligation to act, the violation is *complete* at the first instance the elements are met. It is nevertheless not *completed* as long as the obligation remains unfulfilled. "The crime achieves no finality until such time." ' [Citation.]" (*People v. Mason*, *supra*, 232 Cal.App.4th at

9

p. 365.)  Here, Craig's violation of section 29800, subdivision (a)(1) was complete as of July 22, 2021, but not completed until July 24, 2021.  Accordingly, we will reverse the earlier in time of his two felon-in-possession convictions given the continuing nature of the offense.

## DISPOSITION

The judgment of conviction on count 5, the July 22, 2021 conviction for possession of a firearm by a felon, along with the 16-month sentence imposed on count 5, are reversed.  The matter is remanded to the trial court with directions to resentence Craig if the court wishes to exercise its sentencing discretion in light of the reduced sentence.  The court is to prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

CHANEY, J.

BENDIX, Acting P. J.

10